IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:26-cv-219

| | |
|---|---|
| M.M., individually and on behalf of C.M., and C.M., <br><br> Plaintiffs, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY; BANK OF AMERICA CORPORATION; BANK OF AMERICA CORPORATION CORPORATE BENEFITS COMMITTEE; AND THE BANK OF AMERICA GROUP BENEFITS PROGRAM, <br><br> Defendants. | |

## COMPLAINT

Plaintiffs M.M., individually and on behalf of C.M., and C.M., by and through undersigned counsel, hereby complain against Defendants, alleging in the totality and alternatively as follows:

## INTRODUCTION

M.M. was enrolled in an employer-sponsored health plan and enrolled C.M. as a dependent in that plan. C.M. received more than thirteen weeks of mental health treatment at Confluence Behavioral Health, LLC ("Confluence"). Defendants denied payment for all of this treatment, requiring Plaintiffs to incur more than $71,725 in expenses. Defendants initially denied coverage asserting that Confluence did not meet the inpatient criteria. After Plaintiffs appealed, Defendants affirmed the denial contending that Confluence did not meet the criteria for treatment as a "residential treatment facility." Because Defendants' denial of benefits was

inconsistent with the Plan, Plaintiffs bring this action to recover benefits owed to them by Defendants and any other appropriate relief.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are residents of Florida. M.M. is C.M.'s parent.

2. This case involves mental health treatment and other confidential medical and mental health information. C.M. is a young adult and sought treatment for conditions that began during minority. Using Plaintiffs' surnames would render them identifiable and would intrude upon private health care matters including matters protected by HIPAA.

3. Defendant Bank of America Corporation ("Bank of America") is, and was at all times relevant hereto, M.M.'s employer.

4. Bank of America is headquartered in Charlotte, Mecklenburg County, North Carolina.

5. Defendant Bank of America Group Benefits Program (the "Plan") is a employee welfare benefits plan established by Bank of America to provide health benefits for participants.

6. At all times relevant to this Complaint, M.M. was an employee of Bank of America and enrolled in the Plan as a participant.

7. At all times relevant hereto, C.M. was M.M.'s dependent was and enrolled by M.M. as a beneficiary under the Plan.

8. Bank of America is the Plan Sponsor of the self-funded Plan.

9. Defendant Bank of America Corporate Benefits Committee (also referred to in the SPD as the Bank of America Plan Administrator) ("BOAPA") is the administrator of the Plan. BOAPA is located in Charlotte, Mecklenburg County, North Carolina.

2

10. On information and belief based on the Plan documents, denial documents, and appeals involved herein, Bank of America contracted with Defendant Aetna Life Insurance Company ("Aetna") to handle the day-to-day administration of the Plan, with Aetna's responsibilities including making benefit decisions, paying claims, and processing benefit claims and appeals.

11. Defendant Aetna is headquartered in Hartford, Hartford County, Connecticut.

12. The Plan is a welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

13. Bank of America, BOAPA, and Aetna (collectively "Defendants") are fiduciaries of the Plan as defined by ERISA.

14. This lawsuit is brought to obtain an order requiring Defendants/the Plan to pay or reimburse expenses incurred during C.M.'s treatment at Confluence. The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"); an award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

15. This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

16. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue, and the location of Defendants Bank of America and BOAPA.

3

## FACTUAL ALLEGATIONS[1]

*Allegations regarding the Plan*

17.     Each year, Bank of America/BOAPA issued a booklet entitled Bank of America Health & Insurance Summary Plan Description for the Plan ("Benefit Booklet").

18.     Upon information and belief, the Benefit Booklet, along with any applicable summary of material modifications, constitutes the official summary plan description for the Plan for the coverage year.

19.     As part of their appeal, Plaintiffs quoted the 2021 Benefit Booklet while also noting that C.M. received benefits in 2023. In their response, Aetna also apparently quoted the 2021 Benefit Booklet.

20.     Because Aetna did not correct Plaintiffs' citation to the 2021 Benefit Booklet during the appeals process, on information and belief, the relevant sections of the 2021 Benefit Booklet discussed herein were still the governing provisions of the Plan in 2023, as worded in the 2021 Benefit Booklet.

21.     The 2021 Benefit Booklet states that treatment of mental health conditions is covered as follows:

> Mental health and chemical dependency includes treatment rendered in connection with conditions classified in the Diagnostic and Statistical Manual of Mental Disorders (Fifth Edition) published by the America Psychiatric Association. (This is the diagnostic classification used by mental health and chemical dependency providers in the U.S.) Services *include, but aren't limited to*:
> - Acute inpatient and partial hospitalization
> - Outpatient office visits
> - Intensive outpatient programs
> - Residential treatment

---

[1] Unless otherwise noted, the information supporting these allegations is contained within the Administrative Record. The Administrative Record is incorporated herein by reference.

- Methadone clinics or other medication-assisted treatment programs

An approved treatment facility must meet the following criteria:
- Accredited by The Joint Commission on Accreditation of Healthcare Organizations or an appropriate state licensing board
- Provides 24-hour nursing care
- Has an onsite psychiatrist to provide weekly assessments

2021 Benefit Booklet at 52–53 (emphasis added).

22. The Plan notes a limitation on mental health and chemical dependency coverage, excluding coverage for "Treatment at unlicensed halfway houses or group homes." 2021 Benefits Booklet at 63.

*Background of C.M.'s medical issues and treatment*

23. Prior to admission to Confluence, C.M. was diagnosed with various serious mental health disorder diagnoses under the DSM-5.

24. C.M. received treatment for these disorders at Confluence from March 20, 2023 through June 26, 2023.

25. Confluence was a behavioral health treatment facility located in Vermont.

26. Confluence offered transitional supervised living programs for young adults living with mental health disorders.

27. Confluence provided mental health programs that were less intensive than acute hospitalization but more intensive than outpatient therapy, which qualified it as an intermediate or sub-acute behavioral health facility.

28. At all times relevant hereto, Confluence was licensed by the state of Vermont to operate a therapeutic community residence in accordance with the governing Vermont state regulations.

5

29.     C.M. benefited from the intensive mental health treatment received at Confluence and had improvements in their diagnosed conditions from the services received at Confluence.

30.     Confluence charged about $71,725 for the services it provided to C.M., which charges were submitted to Defendants.

31.     Defendants denied all charges for the services Confluence provided to C.M.

32.     In a letter dated March 22, 2023, Aetna denied the claim for C.M.'s treatment at Confluence from March 20, 2023.

33.     With regard to C.M.'s treatment, the letter listed the "Service Description" as "Inpatient Care" and listed the "Type of Service" as "Residential Mental Health."

34.     With respect to the reason for denial, the letter stated: "This is not a covered service under the terms of the plan."

35.     The letter continued:

(Not a Covered Service Denial) This coverage denial was based on the terms of the member's benefit plan document (such as the Certificate of Coverage or benefit plan booklet/handbook, including any amendments or riders). The requested service is not covered. The plan provides limited or no coverage for this service. Please see the section of the benefit plan document that talks about what the plan covers.

36.     The letter gave no further explanation as to what particular pages of the Benefit Booklet provided any support for the denial.

37.     In an Explanation of Benefits ("EOB") dated August 24, 2023, Aetna approved certain amounts and denied certain amounts for unspecified dates of service for C.M.'s treatment at Confluence.

38.     In a letter dated September 11, 2023, M.M. submitted a Level One Member Appeal of Aetna's denial of benefits. Among other things, M.M.:

6

a.  Noted that the Plan specified that it provided coverage for treatment of mental health conditions in "a variety of inpatient and outpatient settings, including intermediate residential treatment." Plaintiffs further noted that they could not locate any exclusion for licensed transitional supervised living programs like Confluence. (citing 2021 Benefit Booklet at 43);

b.  Requested a physical copy of all documents under which the Plan was operated, and all documentation used for the initial determination and level one appeal determination, as well as the reviewer's name, credentials and experience, and case notes or report; and

c.  Requested Aetna conduct a comparative parity analysis to determine whether the Plan is truly being administered in compliance with the Mental Health and Addiction Equity Act ("MHPAEA").

39.  In a letter dated November 10, 2023 ("Appeal Denial Letter"), Aetna reported that Plaintiffs' Level One Member Appeal had been denied.

40.  The Appeal Denial Letter stated in relevant part as follows:

Dear Appellant:

We reviewed your concerns, which we received on September 13, 2023, about your recent claims. Here's our decision.

**What we reviewed**
We are responding to the appeal of our decision on the following issue(s):
• Claim billed amount: $8,700.00
• The inpatient mental health services rendered by Confluence Behavioral Health, LLC from March 20, 2023 to March 31, 2023
• Remark: O60- This is not covered. Your stay did not meet the inpatient criteria. Your care could be provided without an inpatient stay.
• Claim billed amount: $21,750.00
• The inpatient mental health services rendered by Confluence Behavioral Health, LLC from April 01, 2023 to April 30, 2023
• Claim billed amount: $22,475.00
• The inpatient mental health services rendered by Confluence Behavioral Health, LLC from May 01, 2023 to May 31, 2023
• Claim billed amount: $18,850.00
• The inpatient mental health services rendered by Confluence Behavioral Health, LLC from June 01, 2023 to June 26, 2023.

We reviewed all available information, including:
• The appeal on your behalf
• The claims
• Authorization for Release of Protected Health Infonnation (PHI)

7

• The Authorized Representative Request form
• Aetna's denial letter
• The Employee Retirement Income Security Act (ERISA) information provided with the appeal
• Select pages of the Bank of America Summary Plan Description (SPD)
• UB-04 claim forms, provider license to operate information and regulations, information about the Mental Health Parity and Addiction Equity Act (MHPAEA) law, court ruling, information from the Department of Labor and US Government
• Aetna policies
• The Bank of America SPD.

**Our decision on this appeal**
After reviewing the information above, we are standing by our earlier decision to uphold the denial of inpatient mental health services rendered by Confluence Behavioral Health, LLC from March 20, 2023 to June 26, 2023.

**How we made our decision**
In the appeal, the request is to consider coverage based on this facility being a licensed transitional supervised living facility. The appeal does not agree that these services are not covered by the plan because they could not find any exclusion language in the plan documents. The appeal states that "The only exclusion that seemed remotely related to these services states: No payment will be made for expenses incurred: ... Treatment at unlicensed halfway houses or group homes.", and it was noted in the appeal letter that Confluence is neither a halfway house nor a group home, but rather a licensed supervised living program and is duly licensed by the state of Vermont. The appeal is asking for a comparative parity analysis to determine if the plan is being administered in compliance with the MHPAEA.

To meet the criteria for coverage, for treatment at a residential treatment facility, the facility must meet these guidelines as shown below:

- An institution specifically licensed as a residential treatment facility by some state and federal laws to provide for mental health residential treatment programs
- Credentialed by us or accredited by 1 of the following for the services done:
  1. The American Osteopathic Association's Healthcare Facilities Accreditation Program (HFAP)
  2. The Committee on Accreditation of Rehabilitation Facilities (CARF)
  3. The Council on Accreditation (COA)
  4. The Joint Commission (TJC)

8

41.  Notably, the Appeal Denial Letter did not cite to any specific page of the

Plan or Plan language that Aetna asserted imposed these specific requirements.

42.  The Appeal Denial Letter continued as follows:

An institution has to meet the following for Residential Treatment Programs
treating mental disorders:
- Behavioral health provider actively on duty 24/7
- Medical director is a physician
- Patient treated by a psychiatrist at least once a week.

A review of the precertification department's notes show that a representative
for Confluence, Lisa, (last name unknown), called on March 21, 2023, and
advised that the facility is licensed but not accredited. Our records indicate
that on March 22, 2023, we advised the contact that Confluence does not meet
the criteria for coverage because they are not accredited.

43.  On information and belief, Confluence was accredited by a non-state

organization as of March 2023.

44.  The Appeal Denial Letter continued:

Therefore, the services rendered from March 20, 2023 to June 26, 2023, are
not covered by the plan. Please note, our system inadvertently paid claims for
April, May, and June. We have referred this matter to the Overpayment
department.
…
The Federal - Mental Health Parity Act (MHPA) law does not prevent an
insurer from applying specific plan exclusions regarding accreditation or
coverage for the type of treatment provided. In addition, the MHPA does not
mandate that benefit plans provide mental health coverage.

Both mental health and medical/surgical benefits are subject to medical
necessity. Aetna's Utilization Management team has a solid understanding of
mental health parity to ensure that prior authorization requirements and
clinical decision making for behavioral health services are not more restrictive
than comparable physical health services.

This is strictly a benefit determination. We do not intend it to be a comment or
question as to the necessity of the service in question. Therefore, review by a
clinician is not required.

Please refer to the SPD in the section titled '**Covered medical services**'
where it states:

9

> "**Mental health and chemical dependency**
> You may access your mental health and chemical dependency benefits directly by calling member services at the phone number listed on your plan ID card. They will direct you to a provider or facility appropriate for those problems you or a family member may be experiencing.
>
> Mental health and chemical dependency includes treatment rendered in connection with conditions classified in the Diagnostic and Statistical Manual of Mental Disorders (Fifth Edition) published by the American Psychiatric Association. (This is the diagnostic classification used by mental health and chemical dependency providers in the U.S.) Services include, but aren't limited to:
>
> • Acute inpatient and partial hospitalization
> • Outpatient office visits
> • Intensive outpatient programs
> • Residential treatment
> • Methadone clinics or other medication-assisted treatment programs
>
> An approved treatment facility must meet the following criteria:
>
> • Accredited by The Joint Commission on Accreditation of Healthcare Organizations or an appropriate state licensing board
> • Provides 24-hour nursing care
> • Has an onsite psychiatrist to provide weekly assessments

45. While Aetna did not provide a page citation, as noted above, the language regarding coverage for "**Mental health and chemical dependency**" is identical to that at pages 52-53 of the 2021 Benefit Booklet cited by Plaintiffs in the Level One Member Appeal.

46. The Appeal Denial Letter continued:

> **Note**
> Treatment at licensed methadone clinics, licensed halfway houses and group homes is covered under the mental health and chemical dependency program. All services must be deemed medically necessary. ….

47. The Appel Denial Letter further noted that, "[w]ith this **final decision**, the appeal process within Aetna has been completed."

10

48. In response to Plaintiffs' level one appeal, Defendants did not provide any of the documents and information Plaintiffs had requested.

49. Aetna's decision to deny benefits for C.M.'s treatment at Confluence was wrongful in various respects, including but not limited to those discussed below.

50. First, the Appeal Denial Letter asserted that a residential treatment facility was required to be both licensed and credentialed by one of four specified credentialing organizations. Aetna, however, did not cite any part of the Plan in support of those requirements.

51. In contrast, the Plan, on its face, required that a "treatment facility" had to meet three criteria: (1) "Accredited by The Joint Commission on Accreditation of Healthcare Organizations *or* an appropriate state licensing board' (2) "Provides 24-hour nursing care" and (3) "Has an onsite psychiatrist to provide weekly assessment." (2021 Benefit Booklet at 53) (emphasis added).

52. On the face of the Plan, then, Confluence had to be accredited by The Joint Commission on Accreditation of Healthcare Organizations *or* a state licensing board. Confluence was licensed by Vermont to provide mental health services, which met the Plan's express requirements with respect to accreditation. Aetna cited no part of the Plan allowing it to impose additional requirements for coverage not contained on the face of the Plan as a reason to deny benefits. Denying benefits on the basis that Confluence was "not accredited" was accordingly wrongful under the Plan.

53. Aetna also did not satisfy Plaintiffs' request for Aetna to show that the denial of benefits for C.M.'s mental health treatment did not reflect a violation of the MHPAEA.

54. Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

55. C.M.'s treatment at Confluence was a covered service for mental health treatment under the Plan.

56. The wrongful denial by Defendants/the Plan of benefits solely and directly caused Plaintiffs to incur no less than $71,725 of expenses for C.M.'s treatment at Confluence.

57. After receiving the denial, litigation was Plaintiffs' only option to enforce their right to benefits owing under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

58. Plaintiffs thereafter retained the undersigned to pursue their rights and remedies under ERISA.

59. The remedies Plaintiffs seek herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008, pre-judgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

60. Plaintiffs do not seek double recovery.

## FIRST CAUSE OF ACTION

*(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))*

61. All allegations of this Complaint are incorporated here as though fully set forth herein.

62. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Aetna, acting

12

as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

63. Defendants wrongly excluded coverage for C.M.'s treatment in violation of the terms of the Plan, which promise benefits to employees and their dependents for treatment of mental health disorders.

64. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

65. The Appeal Denial Letter prepared by Aetna demonstrates the absence of a meaningful analysis of Plaintiffs' appeal. Among other things, Defendants Plan did not engage with or respond to the issues presented in the appeals and did not meaningfully address the arguments or concerns raised during the appeal process.

66. Defendants breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in C.M.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of C.M.'s claims.

67. The actions of Aetna and the Plan in denying payment for C.M.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

## SECOND CAUSE OF ACTION

(*Violation of the Mental Health Parity and Addiction Equity Act (29 U.S.C. § 1132(a)(3)*)

13

68. All allegations of this Complaint are incorporated here as though fully set forth herein

69. The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Defendants'/the Plan's fiduciary duties.

70. Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

71. The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

72. Impermissible nonquantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

73. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for C.M.'s treatment include subacute inpatient treatment settings such as skilled nursing facilities, inpatient rehabilitation facilities, etc.

74. The Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner claimed by Defendants for treatment for C.M. at Confluence.

14

75. Upon information and belief, Defendants' denial of coverage also violated the MHPAEA in application or effect. Because Defendants declined to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

76. Defendants are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

77. Plaintiffs expressly requested Aetna to perform a MHPAEA analysis of the Plan. They expressed serious concern that Aetna was violating the statute and asked for a response using specific and direct examples. Defendants failed or declined to do this and failed or declined to even address the MHPAEA in its Appeal Denial Letter or EOBs.

78. These MHPAEA violations by Defendants are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

    (a)    A declaration that the actions of Defendants violate the MHPAEA;

    (b)    An injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

    (c)    An Order requiring the reformation of the terms of the Plan and the criteria used by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

    (d)    An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

    (e)    An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

(f)     An Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

(g)     An Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA; and

(h)     An Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

79.     In addition, Plaintiffs are entitled to an award of pre-judgment interest and attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiffs seek relief as follows:

1.  Judgment in the total amount owed for C.M.'s treatment at Confluence;

2.  Pre- and post-judgment interest to the date of payment;

3.  Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

4.  Recoverable attorneys' fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

5.  For such further relief as the Court deems just and proper.

DATED this 19th day of March 2026.

/s/Norris A. Adams, II
NORRIS A. ADAMS. II
N.C. State Bar No. 32552
ESSEX RICHARDS, P.A.
1701 South Boulevard
Charlotte, North Carolina 28203
Telephone: (704) 377-4300
Facsimile: (704) 372-1357
NAdams@essexrichards.com

John M. Mejia*
Utah State Bar No. 13965
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111

Telephone: (801) 323-5000
Facsimile: (801) 355-3472
John.Mejia@chrisjen.com

*Attorney for Plaintiffs*

*Subject to Admission Pro Hac Vice